******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MYCALL OBAS
(AC 34598)

DiPentima, C. J., and Sheldon and Flynn, Js.

*Argued October 22, 2013—officially released January 14, 2014*

(Appeal from Superior Court, judicial district of Danbury, Mintz, J. [criminal judgment; extension of probation]; Blawie, J. [motion to modify probation; request for permission to appeal].)

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom were *Sean McGuinness*, deputy assistant state's attorney, and, on the brief, *Stephen J. Sedensky III*, state's attorney, for the appellant (state).

*Neal Cone*, senior assistant public defender, with whom was *Rosemarie Chapdelaine*, senior assistant public defender, for the appellee (defendant).

*Opinion*

FLYNN, J. At the heart of the case before us is the defendant's request to be exempted from continued registration as a sex offender pursuant to General Statutes § 54-251. The defendant, Mycall Obas, was convicted of one count of sexual assault in the second degree in violation of General Statutes (Rev. to 2001) § 53a-71 (a) (1), resulting from a 2002 offense when he was age eighteen, committed against a minor, age fifteen, who could not by law consent. The court granted the defendant's motion made approximately seven years after his guilty plea and sentencing, which, among other things, had imposed that condition of probation. Pursuant to General Statutes § 54-96, the state requested permission to appeal from the granting of the defendant's motion, which the court denied. The state now appeals from that denial of the right to appeal, as well as the court's judgment granting an exemption from registering and releasing the defendant of certain other conditions imposed at his sentencing. It does so on grounds that (1) permission to appeal was improperly denied and (2) any exemption from registration must be made at the time of the defendant's sentencing, or not at all. As a third reason for appeal, the state argues that registration as a sex offender and the condition of no unsupervised contact with any minor under sixteen years of age was part of the plea bargain struck on December 11, 2003, and that, once the court accepted it, as a contract, the court was without authority to change it in a later proceeding. We disagree and conclude that although the right to appeal was improvidently denied to the state, the court had authority to grant the exemption and modification of the defendant's probationary conditions. Accordingly, we affirm that aspect of the judgment of the trial court.

The following facts and procedural history inform our review. The defendant pleaded guilty to one count of sexual assault in the second degree on December 11, 2003. The plea stemmed from a 2002 incident when the defendant was eighteen years old and a high school senior. The victim was a fifteen year old student who attended the same school as the defendant. According to the prosecutor, the victim never complained that her sexual involvement with the defendant was not consensual.

The defendant cooperated fully with the police investigation and agreed to testify against his codefendant at trial. As part of the plea agreement struck between the defendant and the state, the defendant received a ten year sentence of imprisonment, suspended after the mandatory minimum nine months, followed by ten years of probation. The prosecutor explained to the court: "The conditions would be: to register as a sex offender, that's a ten year registration . . . . [The] sex offender evaluation and any treatment deemed neces-

sary. No contact with any individual under, unsupervised contact, with anyone under [sixteen] and no contact, whatsoever, directly or indirectly with the victim."[1] There was no agreement between the defendant and the state that the defendant would never seek modification of the conditions of probation.

Following the prosecutor's recitation of the underlying facts, plea agreement, and recommendation for a split sentence followed by probation with special conditions, the court canvassed the defendant.

"The Court: You've heard the agreed upon recommendation, which is ten years, execution suspended after nine months, which is a mandatory minimum, ten years of probation, standard issues—standard conditions of probation, special conditions of sex offender evaluation and treatment, as deemed necessary and appropriate by Probation. Registration under sex offender status for [ten] years, no contact with the victim and no unsupervised contact with anyone under the age of [sixteen] years of age. Do you understand that to be the agreed upon recommendation?

"The Defendant: Yes, Your Honor."

The court accepted the defendant's plea and imposed sentence in accordance with the agreed upon disposition. The defendant was ordered, "[i]n addition to the standard conditions of probation," to register as a sex offender for a period of ten years, to undergo sex offender evaluation and treatment as deemed necessary, to have no unsupervised contact with anyone under age sixteen and to have no contact with the victim.

Upon his release from custody in November, 2004, the defendant began reporting to the Office of Adult Probation, registering as a sex offender and receiving sex offender treatment. He violated his probation in 2005 by failing to report a change of address following his parents' eviction from their home. For this violation, two additional years were added to his probation. Since the 2005 violation, the defendant has reported timely to his assigned probation officer, has continued to receive sex offender treatment, and has not engaged in any additional criminal activity. He earned a high school diploma, enrolled in community college and has maintained a full-time job.

In 2011, the defendant filed a motion to modify the conditions of his probation. Specifically, the defendant asked that the term of his probation be reduced and that the order that he register as a sex offender be terminated. As a predicate for the hearing on the defendant's motion, the court ordered him to undergo an additional psychosexual evaluation. The evaluation concluded that the defendant presented a low risk of reoffending and that he "would not be one whom the community should fear." (Internal quotation marks

omitted.) Three separate probation status reports authored by the defendant's supervising officer in the sex offender unit lauded his rehabilitation and raised no objection to the defendant's requested modification.

Following contested hearings on January 31, 2012, and April 20, 2012,[2] the court, *Blawie*, *J.*, exempted the defendant from the continued obligation to register as a sex offender under § 54-251. Pursuant to § 54-251 (b), the court made findings that the defendant was under nineteen years of age at the time of the offense and that registration was not required for public safety. The court also modified the probation condition prohibiting unsupervised contact with anyone under age sixteen to allow such interactions but only to the extent approved by the Office of Adult Probation. In addition, the court allowed the defendant to travel to South Africa as approved by the Office of Adult Probation. The court denied that part of the defendant's motion in which he sought to reduce his probation from twelve years to ten years.

The state filed a motion requesting permission to appeal from the trial court's modification order. The trial court denied the state's request, but the state nonetheless filed this appeal. The trial court, sua sponte, issued a memorandum of decision on May 30, 2013, articulating the reasoning for its decision. The state takes the view that this action by the court was extraordinary since neither party requested an articulation. However, our Supreme Court has explained: "Although we encourage trial courts to issue memoranda of decision at the time of rendering judgment, we recognize that under certain circumstances it is permissible to render a judgment and thereafter issue a memorandum of decision." *Lauer* v. *Zoning Commission*, 246 Conn. 251, 261, 716 A.2d 840 (1998). "A memorandum of decision becomes imperative when an appeal is taken because it provides . . . the appellate court with the basis of the trial court's underlying reasoning for its decision." Id., 260.

A memorandum of decision is particularly helpful here because our case law counsels a reviewing court to look to the memorandum in considering whether the trial court's denial of the state's request for permission to appeal constitutes an extreme abuse of discretion. See *State* v. *Peeler*, 271 Conn. 338, 409, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct 94, 163 L. Ed. 2d 110 (2005).

I

We turn first to whether the court improperly denied the state certification to appeal, and conclude that it did.

Section 54-96 provides: "Appeals from the rulings and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge,

to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused." The statutory language appears clear on its face to permit appeals by the state only "with the permission of the [court] . . . ." However, our state's highest court in *State* v. *James*, 261 Conn. 395, 408 n.18, 408–409, 802 A.2d 820 (2002), essentially adopted the reasoning of Justice Shea's dissenting opinion in *State* v. *S & R Sanitation Services, Inc.*, 202 Conn. 300, 313–16, 521 A.2d 1017 (1987). In *S & R Sanitation Services, Inc.*, Justice Shea opined: "To the extent that the [majority] opinion may rely on the elaborate discussion by the trial court of the grounds upon which it dismissed the information as its statement of 'considered reason[s]' for denying permission to appeal, the implication is that, so long as the memorandum of decision gives more than cursory treatment to the issues, a trial judge has absolute discretion to deny permission to appeal under the statute. The legislature could never have intended to vest in a trial judge such arbitrary authority to preclude appellate review of his own decisions. It is fundamental that one cannot be a judge in his own case. Unless this principle is deemed to have been wholly disregarded in § 54-96 by making the trial judge's determination conclusive, so long as the record demonstrates that sufficient judicial effort has been devoted to the issues, a denial of permission to appeal cannot properly be based upon the trier's view that his judgment is correct and that any appeal therefrom would be fruitless." Id., 314–15 (*Shea, J.*, dissenting).

In *State* v. *Peeler*, supra, 271 Conn. 408, our Supreme Court set forth the appropriate standard to review appeals where the trial court has denied the state the right to appeal pursuant to § 54-96. "As a general proposition . . . § 54-96 authorizes the state to appeal questions of law in a criminal case only if the trial court grants permission to appeal. Section 54-96, however, does not preclude an appeal by the state when the denial was so arbitrary as to constitute an extreme abuse of discretion rendering the denial ineffective. In such cases the statute's condition requiring the court's permission to appeal cannot serve to insulate a trial court from review by this court; rather, the statute as a whole remains operative to allow appeal by the state. . . . Although we accord great deference to the trial court's discretionary rulings on these matters, that does not mean that its decision is shielded from our scrutiny. . . . Section 54-96 does not deprive this court of jurisdiction simply because the trial court gave considered reasons when it denied the state permission to appeal. . . . Confidence in our judicial system would be severely eroded if the trial court had the authority to dismiss [the penalty phase] against [a] defendant . . . on an unsound premise, and could then insulate its decision from appellate review. . . . Consequently, this court will review a trial court's decision denying

the state an appeal and will not uphold the denial if the record manifests a clear and extreme abuse of discretion or [if] injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) Id., 408–409.

"[I]n the context of evaluating whether a court has abused its discretion in denying requests for certification or permission to appeal, we repeatedly have applied the criteria set forth in *Lozada* v. *Deeds*, 498 U.S. 430, 432, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991). See, e.g., *State* v. *James*, [supra, 261 Conn. 405–10] (denial of state's request for permission to appeal from court's ruling that police lacked probable cause to arrest); *Seebeck* v. *State*, 246 Conn. 514, 534, 717 A.2d 1161 (1998) (denial of request for certification to appeal from denial of petition for new trial); *Simms* v. *Warden*, 230 Conn. 608, 616, 646 A.2d 126 (1994) (denial of petition for certification to appeal from denial of writ of habeas corpus). The *Lozada* inquiry was established in order to determine whether a petitioner has made the requisite substantial showing of the denial of a federal right for the issuance of the required certificate of probable cause to appeal the denial of federal habeas relief . . . . In *Lozada*, the United States Supreme Court held that the required substantial showing was made if the petitioner [1] demonstrate[s] that the issues are debatable among jurists of reason; [2] that a court could resolve the issues in a different manner; or [3] that the questions are adequate to deserve encouragement to proceed further. . . . In the federal courts, the probable cause certificate serves the same policy goal as the granting of permission for certification to appeal does in Connecticut, namely, to screen out frivolous appeals while still protecting the litigants' statutory right to appellate review of adverse determinations. . . . [Consequently], we held that the *Lozada* criteria w[ere] appropriate in evaluating an abuse of discretion in which the state sought permission to appeal under . . . § 54-96. *State* v. *James*, supra, [405–10]. Thus, [we have made] clear that when a petitioner presents an issue on appeal that satisfies any one of the *Lozada* criteria, that petitioner ought to have that issue considered on appeal." (Internal quotation marks omitted.) *State* v. *Peeler*, supra, 271 Conn. 409–10.

We conclude from all of this that despite the statutory language of § 54-96 permitting the state to appeal "with the permission of the [court]," that the state, after requesting permission to appeal, may directly appeal a question of law without the permission of the court when permission is expressly denied. On appeal, the reviewing court will determine whether the trial court's denial constituted an extreme abuse of discretion or would work an injustice using the alternatives found in the *Lozada* criteria. Even if the state was improvidently denied the right to appeal, the judgments may be affirmed if the facts and law so warrant that result. See,

e.g., *Gibson* v. *Commissioner of Correction*, 118 Conn. App. 863, 864, 986 A.2d 303 (concluding habeas court abused its discretion by denying certification to appeal, but affirming the court's decision on the merits), cert. denied, 295 Conn. 919, 991 A.2d 565 (2010).

We first analyze each of the state's appellate issues in light of the criteria set forth in *Lozada*, and conclude they both deserve appellate review. See *Lozada* v. *Deeds*, supra, 498 U.S. 432. *Lozada* counsels that appellate review should be permitted if a substantial showing is made that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. Id.; see also *State* v. *James*, supra, 261 Conn. 404.

Two issues of law were raised by the state before the trial court, neither of which previously has been decided by the Connecticut Supreme or Appellate Courts. First, is the issue of whether § 54-251 (b) permits granting an exemption from registration after the sentence has begun, in accordance with a plea agreement, by modifying a probationary term requiring registration. Second, is the issue of whether the plea agreement barred later modification of the sex offender registration requirement and the condition of no unsupervised contact with minors under sixteen. These are questions of law on which our state's court of last resort has not ruled, both debatable among jurists of reason and, both deserving encouragement to proceed further. See *State* v. *James*, supra, 261 Conn. 404. We therefore conclude that the court's denial of the state's request for permission to appeal was improvident, and we review and decide each of the legal issues raised by the state in turn.[3]

## II

We next address the state's claim that § 54-251 (b) does not permit the court to grant the defendant's request for an exemption from the registration requirements for sex offenders approximately seven years after the defendant initially was required to register. We disagree.

This claim presents a question of statutory construction, over which we exercise plenary review. See *State* v. *Burns*, 236 Conn. 18, 22, 670 A.2d 851 (1996). Section 54-251 (a) provides in relevant part: "Any person who has been convicted or found not guilty by reason of mental disease or defect of a criminal offense against a victim who is a minor or a nonviolent sexual offense, and is released into the community on or after October 1, 1998, shall, within three days following such release or, if such person is in the custody of the Commissioner of Correction, at such time prior to release as the commissioner shall direct, and whether or not such person's place of residence is in this state, register such person's

name, identifying factors, criminal history record, residence address and electronic mail address, instant message address or other similar Internet communication identifier, if any, with the Commissioner of Emergency Services and Public Protection, on such forms and in such locations as the commissioner shall direct, and shall maintain such registration for ten years except that any person who has one or more prior convictions of any such offense or who is convicted of a violation of subdivision (2) of subsection (a) of section 53a-70 shall maintain such registration for life. . . ."

Subsection (b) of § 54-251 provides for an exemption: "Notwithstanding the provisions of subsection (a) of this section, the court may exempt any person who has been convicted or found not guilty by reason of mental disease or defect of a violation of subdivision (1) of subsection (a) of section 53a-71 from the registration requirements of this section if the court finds that such person was under nineteen years of age at the time of the offense and that registration is not required for public safety."

The state argues that an exemption from registration must be strictly construed because there is no language within § 54-251 (b) expressly authorizing a court to grant an exemption once registration has commenced, and thus the court had no power to do so because the court cannot supply omissions in or add exceptions to a statute. The state further argues that the text of the statute must be considered in relation to other statutory provisions. The state argues that because § 54-251 (a) requires registration within three days of release into the community or if "in the custody of the Commissioner of Correction, at such time prior to release as the commissioner shall direct," that provision, when considered with § 54-251 (d), which requires notice of any exemption application both to the Office of Victim Services and the Department of Correction, shows that the legislature expected that an application for exemption would be filed before the defendant was released from confinement and was required initially to register. It maintains that if the defendant may be granted an exemption seven years after he had been released from confinement and had commenced registering, it would not be logical to notify both the Office of Victim Services and the Victim Services Unit within Department of Correction.[4] The state urges that logic dictates that the Commissioner of the Victim Services Unit of the Department of Correction would not receive statutorily mandated notice of any exemption application, unless the defendant was required to file notice before release from confinement. We do not accept the state's faulty premise. It wrongly assumes that all defendants who are required to register will be imprisoned for their offenses. The state's logic fails because registration also is required for offenses that would not require a defendant to be jailed. For example, conviction of a crime

such as public indecency, in violation of General Statutes § 53a-186—a misdemeanor, for which a mandatory minimum term of imprisonment is not required and which is sometimes punished only with a fine rather than incarceration—still requires that the Commissioner of Correction be notified. A person who is never jailed for conviction of a sexual offense has no confinement to prison, and therefore is never released from confinement. Yet, he is not barred from seeking an exemption from required registration. We therefore reject this argument because of its faulty premise.

The state also makes the argument that the statute does not contain language explicitly permitting a later exemption from registration, and thus such a later exemption is not permitted. We do not agree. Like the requirement in § 54-251 (a) of registration of sex offenders, many distinct statutes use the phrase or some variation of the phrase "may exempt." Although these statutes do not authorize a later exemption expressly, the context in which this language appears in the statutory text, the statutory subject matter, and the statutory purpose and relation to other statutes suggest, as to some of them, that the legislature did not necessarily intend to require that the exemption needed to be granted concomitant to the underlying statutory obligation taking effect. This is evident, even though there is no language in these statutes expressly authorizing an application for exemption to be made after a point in time when it otherwise initially would have been available. We list a few of those statutes that are illustrative of this point.

For example, General Statutes § 12-81n permits municipalities to "provide an exemption" to businesses that offer child care services to residents of the municipality from paying property tax on up to 100 percent of the assessed value of the property of the business used in providing day care services and up to 10 percent of the balance of the assessed value of the business. Nothing in the text of the statute, or the context in which this language appears, suggests that the exemption must be granted when the business begins offering child care services, or else it is forfeited in perpetuity. The property used may increase in value and hence, its new assessment, may necessitate a new, but later request for exemption. There is a legislative purpose encouraging such facilities for the proper care of small children of working parents. It is equally served whether the exemption is sought after such a facility has first paid property tax in an initial tax year or it later seeks exemption for future years.

Likewise, General Statutes § 22-339b (a) requires owners or keepers of canines and cats of three months of age or older to have such animals vaccinated against rabies. These inoculations must be repeated periodically during the life of a canine or cat. However, subsec-

tion (b) states that the State Veterinarian or Commissioner of Agriculture "may grant an exemption" from vaccination if it is determined that that vaccination would be harmful to the animal. The purpose of this statute is to permit exempting an animal from vaccination at any time when it would be harmful to the animal. The statute does not require that the exemption be obtained concomitant to the requirement to vaccinate (i.e., when the owner or keeper first takes possession of a healthy animal). A young pup may tolerate what an old dog cannot.

Finally, General Statutes § 34-229 (a) requires foreign limited liability companies (LLC) registered or that regularly transact business in the state to electronically file an annual report with the Secretary of the State. However, the Secretary of the State "may grant an exemption" to this requirement if good cause is shown. Nothing in the statute precludes a company from seeking an exemption from this requirement after it has electronically filed the report for several years. A good cause may arise in a subsequent year long after the out-of-state LLC has filed electronically. We reject the state's argument that the lack of express language in § 54-251 (b) authorizing an exemption does not permit a defendant to request an exemption after he has commenced his obligation to register as a sex offender. Section 54-251 (b) must be viewed in the context of the probation statute, General Statutes § 53a-29, which has as its purpose rehabilitation of a defendant. See *State* v. *Faraday*, 268 Conn. 174, 180, 842 A.2d 567 (2004). If that rehabilitative purpose is accomplished, an exemption from registration may be justified, even though rehabilitation had not occurred when the defendant was first placed on probation. "[W]e read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *State* v. *Pommer*, 110 Conn. App. 608, 614, 955 A.2d 639, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). Furthermore, General Statutes § 53a-28 (d) expressly authorizes altering a period of probation.

We thus conclude that § 54-251 (b) permits a court to grant a criminal defendant's request to have an exemption from the registration requirements for sex offenders after the obligation to register has commenced where the registration is made a special condition of probation, and the court finds that the defendant's later rehabilitated status justifies modification. In the present case, the court found that the defendant had rehabilitated himself sufficiently so as to justify modification of the terms of his probation. We conclude that the court acted within its authority in so doing.

### III

We next address the state's claim that because the defendant's guilty plea and the state's recommended

sentence resulted from a plea bargain, the court improperly granted the defendant's motion to modify certain conditions of his probation requiring registration as a sex offender in the statewide registry compiled pursuant to § 54-251 (b), and modifying the restriction that he have no unsupervised contact with minors under sixteen unless approved by the Office of Adult Probation. Specifically, the state argues that "under circumstances such as the present case, where the defendant, as part of the plea bargained agreement, specifically agreed to abide by [these] conditions, the trial court, under well-established principles of contract law, should not have permitted the defendant, after having received the benefits of the agreement, to request [modification]." We reject the state's argument.

To the extent that a plea agreement is akin to a contract; see *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997); it is a contract between the defendant and the state—not between the defendant, the state and the court. See *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971) (describing plea of guilty as "a promise or agreement of the prosecutor" to defendant). As the state itself acknowledges in its brief, "the [s]tate and the defendant are bound by the clear and unambiguous terms of the plea bargain agreement"; "[t]he trial court, however, is not a party to the agreement . . . ."[5] The requirements imposed on the defendant to register as a sex offender and not to have unsupervised contact with children under age sixteen were imposed as special conditions of the defendant's probation.[6]

With that understanding in mind, we now proceed to analyze our law governing probation. General Statutes § 53a-30 (c) provides in relevant part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions [of probation], *whether originally imposed by the court under this section or otherwise* . . . ." (Emphasis added.)

The meaning of the term "modify" is to make less extreme. Merriam-Webster's Collegiate Dictionary (11th Ed. 2011). The meaning of the term "enlarge" is to expand or make larger in scope. Id. Thus, in context, modify must mean the opposite of enlarge, meaning that the court is empowered to reduce or lessen the conditions or period of probation.

It is well settled that the trial court maintains discretion to supervise and, as appropriate, to enlarge or modify the terms of a probationer's probation. See *State* v. *Faraday*, supra, 268 Conn. 180–81 ("[w]hen the court imposes probation, a defendant thereby accepts the possibility that the terms of probation may be modified or enlarged in the future pursuant to [General Statutes] § 53a-30" [internal quotation marks omitted]); *State* v. *Thorp*, 57 Conn. App. 112, 117, 120, 747 A.2d 537 (trial

court's approval of additional probation conditions requested by the Office of Adult Probation was not improper), cert. denied 253 Conn. 913, 754 A.2d 162 (2000); General Statutes § 53a-30 (c) ("[a]t any time during the period of probation . . . after hearing and for good cause shown, the court may modify or enlarge the conditions").

In an earlier case, this court rejected an argument by a criminal defendant similar to that which the state urges upon us now. In *State* v. *Crouch*, 105 Conn. App. 693, 939 A.2d 632 (2008), the state urged this court to uphold a trial court's enlargement of a plea bargained sentence. In *Crouch*, the defendant accepted a sentence that included a period of incarceration, followed by probation. Id., 695. After his release from custody, the state initiated proceedings to add a new condition of probation. The state sought to add sex offender evaluation and treatment, if deemed necessary, as a probationary condition. Id., 696. This proposed enlargement was not part of the agreed upon disposition between the defendant and the state. Id., 695–96.

On appeal, the defendant claimed that the court improperly allowed a special condition of probation to be added, in contravention of the terms of the plea agreement. Id., 698. The state claimed that the enlargement was not improper because the additional condition was not expressly excluded from the terms of the defendant's probation.[7] Id. We said in *Crouch* that if a defendant accepts an offer of probation, he accepts "the possibility that the terms of his probation could be modified or enlarged in the future in accordance with the statutes governing probation." (Internal quotation marks omitted.) Id., 699. Implicit in our holding in *Crouch*, which we make explicit today, is that when the state enters into a plea agreement that includes a period of probation, both the defendant and the state do so with the understanding that the terms of probation may be modified or enlarged in accordance with law, and that such a modification might include a reduction. In the present case, the state made its plea agreement with the defendant with the implicit understanding that the court might later exercise its statutory discretion to modify the terms of the defendant's probation. The court acted within that statutory authority.[8] For the foregoing reasons, we reject the state's argument that the plea agreement divested the trial court of its authority to modify or enlarge the conditions of the defendant's probation.

The judgment is reversed only with respect to the denial of the state's request for permission to appeal; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] It is clear from our review of the entire canvass and the sentence imposed by the court that these last conditions were special conditions of probation.

[2] At the hearing on April 20, 2012, the defendant amended the request he made in his motion to the court. Rather than seeking to terminate the original

ten year probation imposed by the sentencing court, the defendant instead asked the court to excise the two additional years added to his probation in 2005. Additionally, the defendant asked the court to allow him to have unsupervised contact with minors, to leave the country for a short period of time and to exempt him from future registration as a sex offender, pursuant to § 54-251 (b).

[3] We note that with respect to its decision granting the exemption, the trial court first told the state, "I'm prepared to be subject to review by a higher authority by the Appellate or Supreme Court," but then later denied the state permission to appeal that very ruling.

[4] This argument does not take into account that a defendant still on probation may again find himself in the custody of the Commissioner of Correction, if some violation of probation is alleged and he is unable to post bond. In such a scenario, there is some purpose to notification of the Department of Correction's Victim Services Unit.

[5] The state appears to have changed its position at oral argument, to the extent it argued: "The court could change [the agreed upon sentence] at the time of sentencing. But once the court accepted the disposition, it bound the state, the defendant, and the court to the disposition." We reject both the state's original and changed positions.

[6] In sentencing the defendant, the court stated: "Ten years execution suspended after the nine months, which is a mandatory minimum, ten years [of] probation. *In addition to the standard conditions of probation*, the defendant is to register as a sex offender for the ten years, sex evaluation . . . treatment as deemed necessary . . . no unsupervised contact with anyone under the age of sixteen, no contact directly or indirectly with the victim." (Emphasis added.)

[7] The state has displayed a flexible approach toward modification or enlargement of probation after a plea agreement has been accepted by the court. In its brief to this court in *State* v. *Crouch*, the state argued: "[A]t any time during an offender's probation, a trial court may, after hearing and for good cause shown, modify or enlarge the conditions of probation. . . . Although a defendant is free to reject the offer of probation, if he accepts probation, he must accept all its conditions, *including the inherent possibility that his probation may be modified at any time* under [General Statutes] § 53a-30." (Citations omitted; emphasis added.) *State* v. *Crouch*, Appellate Court Records & Briefs, October Term, 2007, State's Brief, p. 18.

[8] Similarly, under the facts of this case, the court's decision to modify probation is akin to the defendant receiving parole under General Statutes § 54-125. A defendant who has accepted a plea agreement that includes a definite period of incarceration does not forfeit his statutory right to petition the Board of Pardons and Paroles for parole. See *State* v. *Andrews*, 53 Conn. App. 90, 95–96, 729 A.2d 232 (1999), aff'd 253 Conn. 497, 752 A.2d 49 (2000). The fact that a grant of parole means that the defendant would be incarcerated for less time than he bargained for does not vitiate the plea agreement.