******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBERT KING *v.* COMMISSIONER OF CORRECTION
(AC 40904)

DiPentima, C. J., and Alvord and Beach, Js.

*Syllabus*

The petitioner, who had been convicted of two counts of the crime of assault
in the first degree in violation of statute (§ 53a-59 [a] [1] and [3]) in
connection with an incident in which he stabbed the victim multiple
times with a knife, sought a writ of habeas corpus, claiming that his trial
counsel had provided ineffective assistance. The habeas court rendered
judgment denying in part and dismissing in part the habeas petition,
from which the petitioner, on the granting of certification, appealed to
this court. *Held*:

1. The petitioner could not prevail on his claim that the habeas court improp-
erly concluded that he failed to establish that he had received ineffective
assistance from his trial counsel:

a. The petitioner's claim that his trial counsel provided ineffective assis-
tance by not objecting to the trial court's jury instructions or requesting
an additional jury instruction regarding the difference between the intent
elements of the two assault charges of which he was convicted, and that
he was prejudiced thereby was unavailing; the habeas court reasonably
concluded that the petitioner failed to establish both deficient perfor-
mance and prejudice, as the petitioner, at the habeas trial, presented
no proposed charge for which trial counsel could have advocated, the
instructions were correct as given and, therefore, further elucidation
was not required to satisfy the standard of reasonably competent repre-
sentation, and there was nothing to suggest that instructions providing
some unspecified greater detail would have made a difference in the
outcome of the trial.

b. The petitioner could not prevail on his claim that his trial counsel
provided ineffective assistance by declining to object to the admission
of a police detective's written summary of the petitioner's oral account
of the incident; trial counsel's strategic decision to allow the written
summary into evidence to present an alternative narrative, namely, that
the petitioner had acted in self-defense, without the petitioner having
to testify and subject himself to cross-examination about his criminal
history, was not unreasonable, and there was not a reasonable probabil-
ity that the outcome of the trial would have been different if the written
summary had been excluded.

c. The habeas court reasonably concluded that the petitioner failed to
prove that he was prejudiced by his trial counsel's failure to request
the trial court to place its rejection of his plea agreement with the state
on the record, as there was no reasonable probability that the outcome
of the criminal proceedings would have been different if trial counsel
had made the request; even if trial counsel had requested the trial court
to place its rejection of the plea agreement on the record, the court
may or may not have done so, and either way, the plea agreement would
have remained rejected, and any suggestion that the court would have
reconsidered its rejection if it had been prompted to put the matter on
the record was pure speculation.

2. The petitioner could not prevail on his claim that the habeas court improp-
erly dismissed his claim that the trial court violated his right to due
process by not stating on the record its reasons for refusing to accept
the plea agreement, which he claimed prevented him from pursuing an
appeal on that issue; there was nothing in the record to suggest that
the petitioner had been harmed by the absence of a record of the
rejection of the plea agreement, as the petitioner did not show that
there would have been the slightest difference in the outcome of the
trial if the rejection had been placed on the record.

Argued January 2—officially released September 24, 2019

*Procedural History*

Amended petition for a writ of habeas corpus,

brought to the Superior Court in the judicial district of Tolland and tried to the court, *Oliver, J.*; judgment denying the petition in part and dismissing the petition in part, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Randall Bowers*, with whom, on the brief, was *Walter C. Bansley IV*, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva Lenczewski*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Robert King, appeals from the judgment of the habeas court denying in part and dismissing in part his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) concluded that the petitioner failed to establish that he had received ineffective assistance from his trial counsel, and (2) dismissed the petitioner's claims that his right to due process was violated by the trial court's not stating on the record its refusal to accept the petitioner's pretrial plea agreement.[1] We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our decision. Following a jury trial, the petitioner was convicted of two counts of assault in the first degree in violation of subdivisions (1) and (3) of General Statutes § 53a-59 (a).[2] During pretrial proceedings and at trial, the petitioner was represented by Attorney Donald O'Brien.

The petitioner appealed to this court, which reversed his conviction and remanded the case for a new trial. *State* v. *King*, 149 Conn. App. 361, 376, 87 A.3d 1193 (2014), rev'd, 321 Conn. 135, 136 A.3d 1210 (2016). Our Supreme Court reversed this court's judgment and remanded the case to this court with direction to affirm the trial court's judgment. *State* v. *King*, 321 Conn. 135, 158, 136 A.3d 1210 (2016). The petitioner commenced this habeas action, and, after a trial, the habeas court denied in part and dismissed in part his amended habeas petition. The habeas court thereafter granted the petitioner's petition for certification to appeal, and the petitioner appealed to this court.

In its decision on the direct appeal, our Supreme Court recited the following relevant facts, which the jury reasonably could have found. "On December 18, 2010, Kyle Neri and Angela Papp went to visit the victim, Kristen Severino, at her residence in Waterbury. Neri and Papp had spent the day getting high on crack cocaine and continued to do so with the victim once they arrived at her residence. While the three were sitting in the victim's apartment, the [petitioner] entered and began to argue with Neri over an unpaid $10 loan that Neri owed the [petitioner]. As the argument between Neri and the [petitioner] continued to escalate, the [petitioner] went to the apartment's kitchen and returned, brandishing a steak knife. The [petitioner] began waving the knife around and shouting at Neri and Papp as Neri attempted to physically wrest the knife from the [petitioner's] control.

"The victim then intervened in the altercation by attempting to persuade the [petitioner] that Neri should not die over a $10 debt. When her verbal entreaties proved unsuccessful, the victim attempted to physically separate the combatants as the [petitioner] continued

to swing the knife at Neri. The [petitioner] then threw the victim against a wall and waved the knife in front of her face. The victim attempted to move and the [petitioner] rapidly stabbed her several times; he then fled the scene." Id., 138–39. Additional facts and procedural history will be set forth as necessary.

## I

The petitioner claims that the habeas court improperly concluded that his trial counsel did not render ineffective assistance. He claims that trial counsel's performance was deficient because he did not cause the charges to be more clearly distinguished from each other, object to the admission of a written summary of the petitioner's account of the incident, and insist that the trial court state on the record its rejection of the plea agreement.[3] We disagree.

"[T]he underlying historical facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland* [v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], however, is a mixed question of law and fact subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 716–17, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"As enunciated in *Strickland* v. *Washington*, [supra, 486 U.S. 687] . . . [i]t is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 510, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circum-

stances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 300–301, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

## A

The petitioner claims that his trial counsel provided ineffective assistance by not objecting to the jury instructions or requesting an additional jury instruction regarding the difference between the intent elements of the two assault charges of which he was convicted, and that he was prejudiced thereby. He contends that he was "improperly convicted under two conflicting theories of guilt, despite both theories being presented in an 'either/or' manner."[4] We are not persuaded.

Section 53a-59 (a) (1) requires an "intent to cause serious physical injury to another person," and § 53a-59 (a) (3) requires that "under circumstances evincing an extreme indifference to human life [the defendant] recklessly engages in conduct which creates a risk of death to another person . . . ." "Convictions are legally inconsistent when a conviction of one offense requires a finding that negates an essential element of another offense of which the defendant has also been convicted. . . . In examining a claim of legal inconsistency, we must closely examine the record to determine whether there is any plausible theory under which the jury reasonably could have found the defendant guilty of both offenses. . . . Additionally, in determining whether two mental states are mutually exclusive, the court must consider each mental state as it relates to the particular result described by the statute." (Citations omitted; internal quotation marks omitted.) *State* v. *King*, supra, 321 Conn. 140–41.

In the course of its decision in the direct appeal, our Supreme Court addressed the issue of whether the verdicts were legally inconsistent in the context of the facts of this case: "At [the petitioner's criminal trial], the jury heard two accounts of the assault. First, the [petitioner's] written statement, provided to a detective and introduced into evidence by the state without objection from the defense, described the stabbing as an accident that occurred when he was swinging the knife at Neri and the victim attempted to physically separate the combatants. In the [petitioner's] account, he and Neri 'got into a tussle. [Neri] was trying to take the knife from me. I know it was getting rough. That was when [the victim] got into the middle of us. She was trying to break us up.' While the victim was in between the [petitioner] and Neri, the [petitioner] began 'swinging the knife at [Neri]. In the middle of that, [the victim] started screaming . . . . That's when I realized she

was hurt. At first, I ain't know what was wrong, but then I thought about it. That's when I knew that I had stabbed her.' Thus, if the jury credited the [petitioner's] statement, it could have found that [his] act of swinging a knife at Neri in close quarters while the victim was between them demonstrated 'an extreme indifference to human life,' and, that by doing so, [he] 'recklessly engage[d] in conduct which create[d] a risk of death to another person,' as required by § 53a–59 (a) (3) for a conviction of reckless assault in the first degree.

"Second, the testimony of Neri, Papp, and the victim portrayed the [petitioner] as intentionally stabbing the victim after the victim interfered in the [petitioner's] altercation with Neri. According to Neri, the victim injected herself into the argument, stated that 'nobody's going to get stabbed over $10,' and offered to pay the [petitioner] the money herself. The [petitioner] then put 'the knife to her face and [told] her to shut . . . up.' After the victim attempted to move away, the [petitioner] 'stab[bed] her three times' on the 'left side' of her 'stomach area.' Consistent with Neri's account, Papp testified that the [petitioner] 'started swinging the knife on [the victim]' and 'stabbing her . . . over and over and over, just going into the [victim].' Likewise, the victim testified that she approached the [petitioner] and told him 'that nobody should die and I would get him the money, nobody needs to be killed tonight.' The victim stated that the [petitioner] then 'threw me up against the wall and put the knife in my face and was screaming at me . . . and yelling at me and calling [me] a [derogatory term]. . . .' The victim testified that the [petitioner] then 'stabbed me . . . [i]n my stomach right here, and three times over here on the side.' The jury reasonably could have credited the combined testimony of the victim, Papp, and Neri to conclude that the [petitioner] acted with 'intent to cause serious physical injury' in violation of § 53a-59 (a) (1) when he stabbed the victim at least three times with a steak knife.

"We therefore agree with the state that the jury reasonably could have found that the [petitioner's] conduct amounted to two separate acts. As the [petitioner] was charged with both reckless and intentional assault, the jury could have found that the [petitioner] was guilty of both crimes by stabbing the victim while recklessly swinging the knife at Neri and then intentionally stabbing the victim after she intervened and the [petitioner] threw her against the wall. The state's exhibits 14 and 15 showed, and the Appellate Court noted, that the victim had *four* stab wounds, and as Neri testified that he only witnessed the [petitioner] stab the victim *three* times, the jury could have attributed the fourth stab wound to the [petitioner's] testimony describing the stabbing as an accident that occurred when the victim got in between the combatants. . . . Accordingly, the [petitioner's] convictions are not legally inconsistent under the state's argument that the assault occurred in

two reckless and intentional phases, respectively.

"Additionally, we observe that under the [petitioner's] version that the assault only occurred in one intentional episode, the convictions are not legally inconsistent as the requisite mental states for the two convictions are not mutually exclusive. As is clear from our recent decision, a defendant may be convicted of crimes that require differing mental states, so long as those states relate to different criminal results. *State* v. *Nash*, [316 Conn. 651, 668–69 114 A.3d 128 (2015)]; cf. *State* v. *King*, 216 Conn. 585, 594, 583 A.2d 896 (1990). . . . [T]he [petitioner's] act of stabbing the victim is consistent with two different mental states, each related to two different results. Thus, even under the reasoning of the [petitioner's] argument, the reasoning of *Nash* controls and the verdict returned by the jury is not inconsistent." (Citation omitted; emphasis in original; footnotes omitted.) *State* v. *King*, supra, 321 Conn. 142–45.

At the habeas trial, the petitioner alleged that his trial counsel was ineffective by not requesting jury instructions that more clearly would have differentiated the counts and by not objecting to the instructions that were given. The habeas court rejected the claim on the grounds that the instructions were sufficient and correct, that there was no indication that the trial court would have altered its instructions if prompted by the petitioner, that no proposed clarifying instructions had been suggested to the habeas court, and that the instructions were, in any event, clear as given. The court concluded that the petitioner failed to establish both deficient performance and prejudice as to this claim.

In the direct appeal, our Supreme Court discussed the clarity of the instructions that were given: "Following his arrest, the [petitioner] was charged in a two count substitute information with two crimes: assault in the first degree in violation of § 53a-59 (a) (1) and assault in the first degree in violation of § 53a-59 (a) (3). . . . At trial, the state did not present the evidence in a manner that related specifically to one charge or the other. After the state rested its case, the court discussed with the [petitioner] his decision not to testify and indicated the possible sentences he could face if convicted. The court specifically noted to the [petitioner] that he could be 'convicted under both sub[divisions]' and explained how that would affect his sentence. Prior to closing argument, the court informed the jury that 'to the extent that what [an attorney] says about the law differs from what I say, you have to follow my legal instructions . . . if there's any discrepancy you've got to follow my instructions.' During closing argument, the prosecutor stated to the jury: 'You may be wondering why there are two charges. You have a variety of evidence to draw from and I don't know what you'll find credible. If you find [the petitioner's] statement

credible, he's saying he's waving the knife around, he's angry with [Neri], and [the victim] jumps in the middle, if you believe [the petitioner's] statement you would look more to the assault one, reckless indifference.'

"Following closing argument, the court instructed the jury and informed it that it 'must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witness' testimony.' The court also reminded the jury that 'arguments and statements by the attorneys in final argument or during the course of the case are not evidence.' The court then explained the charges against the [petitioner] to the jury, noting that [he] was 'charged with two crimes.' The court next explained the elements of each crime to the jury. Following the delivery of the jury charge, the court asked whether counsel had any objection to the charge. Neither counsel objected. At no point in the court's instructions did it suggest that the jury could not convict the [petitioner] of both charges." Id., 146–47.

The petitioner maintains that in the absence of trial counsel's further distinguishing the charges, it is merely a "hypothetical possibility" that the jury plausibly might have pieced the evidence together in such a way as to logically convict the petitioner of both crimes. At the habeas trial, however, the petitioner presented no proposed charge for which trial counsel could have advocated. The habeas court's conclusion that the petitioner failed to establish both deficient performance and prejudice was reasonable. Because the instructions were correct as given, further elucidation was not required to satisfy the standard of reasonably competent representation. See *Walton* v. *Commissioner of Correction*, 57 Conn. App. 511, 524, 749 A.2d 666 (counsel did not render ineffective assistance by failing to object to jury instruction when jury instruction was correct statement of law), cert. denied, 254 Conn. 913, 759 A.2d 509 (2000). Further, there is nothing to suggest that instructions providing some unspecified greater detail would have made a difference in the outcome of the trial, and, therefore, our confidence in the result has not been undermined. See *Strickland* v. *Washington*, supra, 486 U.S. 687. We, therefore, agree with the conclusions of the habeas court.

B

The petitioner also claims that his trial counsel rendered ineffective assistance because he declined to object to the admission of a detective's written summary of the petitioner's oral account of the events that transpired on the night in question. The petitioner characterizes the statement as tantamount to a "confession" of his culpability and stresses that the statement was hearsay that could have been excluded. He contends that prejudice is apparent, referring to a general notion that "experience shows that a jury's ability to evaluate

[the] evidence is biased dramatically by the introduction of a confession, no matter how incredible it appears in light of other evidence." *State* v. *Lawrence*, 282 Conn. 141, 204, 920 A.2d 236 (2007). The petitioner challenges the wisdom of the strategy in allowing the statement to be presented to the jury. We are not persuaded.

The following additional uncontested facts are relevant to this claim. Upon the petitioner's arrest, George Tirado, a police detective, advised the petitioner of his *Miranda* rights and then took the petitioner's oral statement regarding the events that occurred on the night in question. With the petitioner's permission, Tirado typed a summary of the statement that the petitioner had made to him. The petitioner signed the first page, but declined to sign the following two pages because he believed that Tirado's transcription "made it sound worse than it was."

At trial, the state called Tirado as a witness. Before Tirado testified, the jury was excused while the court addressed the extent to which Tirado would be permitted to testify as to the statement the petitioner provided to him. The court indicated that, although the document containing Tirado's typed summary of the petitioner's statement was inadmissible, Tirado would be permitted to testify as to his recollection of the petitioner's statement.

During Tirado's direct examination, the state moved to enter into evidence the document containing Tirado's typed summary. Trial counsel made the decision not to object to its admission.[5] It was entered into evidence as a full exhibit, and Tirado read it to the jury.[6]

At the habeas trial, trial counsel acknowledged that Tirado's typed summary was inadmissible and would not have become a full exhibit had he objected to it. He did not object, however, because he wanted to present an alternative narrative, that the petitioner had acted in self-defense, without the petitioner testifying and subjecting himself to cross-examination about his criminal history. Trial counsel had hoped that the jury would credit the self-defense theory so that the petitioner would be found not guilty of all the charges. Accordingly, he believed that allowing the summary into evidence was his best trial strategy.

Noting that the petitioner had not proposed an alternative strategy and recognizing the presumption that trial counsel's performance was reasonable, the habeas court found no deficiency in trial counsel's strategic decision not to object to the admission of Tirado's typed summary. The court concluded that the petitioner failed to establish both deficient performance and prejudice as to this issue.

A habeas court is required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."

*Strickland* v. *Washington*, supra, 466 U.S. 689. "In *Strickland*, the United States Supreme Court held that [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proved unsuccessful, to conclude that a particular act or omission was unreasonable. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Martin* v. *Commissioner of Correction*, 155 Conn. App. 223, 227, 108 A.3d 1174, cert. denied, 316 Conn. 910, 111 A.3d 885 (2015).

The strategy of allowing Tirado's typed summary of the petitioner's statement into evidence was not unreasonable, and, in any event, there is not a reasonable probability that the outcome of the trial would have been different if the typed summary had been excluded.

C

The petitioner additionally claims that the habeas court erred in denying, for lack of prejudice, his claim that his trial counsel's failure to request the trial court to place its rejection of the plea agreement on the record constituted ineffective assistance of counsel. The petitioner contends[7] that the court was required by Practice Book §§ 39-7[8] and 39-10[9] to place its reasons on the record and that counsel's failure to prompt the court to do so constituted ineffective assistance. We agree with the conclusion of the habeas court that no prejudice has been shown.

The following additional facts, generally agreed to by the parties, are relevant to this claim. Prior to the start of evidence before the jury in the criminal case, the petitioner and the state reached a plea agreement, prompted at least in part by the state's having encountered difficulty in producing witnesses. The prosecutor and trial counsel presented their agreement to the presiding judge, in chambers and off the record. The judge rejected the plea agreement, and trial counsel did not ask the judge to place on the record his reasons for rejecting the agreement. The judge did not sua sponte provide information on the record, and trial counsel did not raise the issue in postverdict motions. At the habeas trial, trial counsel acknowledged that, in hindsight, he had reason to ask the judge to place his rejection on the record, because he believed that "the [j]udge was acting as a prosecutor . . . [b]y telling the [s]tate what—what [the state] can and cannot prove based on . . . the file."

As noted previously, in order to show prejudice a petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, supra, 290 Conn. 510. The standard, as applied to this case, requires a reasonable probability that the outcome of the criminal proceedings would have been different if trial counsel had requested the trial court to place its rejection of the plea agreement on the record.

Had trial counsel so requested, the court perhaps may have responded by putting its rejection on the record; it also may have declined the request. In either event, the outcome would not have been different— the plea agreement would remain rejected. There is no right to have any particular agreement accepted by the court; see *Missouri* v. *Frye*, 566 U.S. 134, 147–48, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); see also *State* v. *Obas*, 147 Conn. App. 465, 481–82, 83 A.3d 674 (2014), aff'd, 320 Conn. 426, 130 A.3d 252 (2016); and any suggestion that the court would have reconsidered its rejection if it had been prompted to put the matter on the record is pure speculation.[10] The habeas court reasonably concluded that the petitioner did not prove prejudice.

II

The petitioner finally claims that the habeas court improperly dismissed his claim that the trial court violated his right to due process by not placing on the record its reasons for refusing to accept the parties' plea agreement because "the petitioner was unable to seek judicial review of the court's refusal to accept the plea agreement." In his appellate brief, he stresses that he and the state were in agreement regarding the proposed plea, and he seems to suggest that the trial court constitutionally could reject the plea only if the rejection was made on the record. He suggests that his position is consistent with Practice Book § 39-10, although he expressly does not argue that a violation of § 39-10 by itself provides a sufficient ground for relief.

The respondent, the Commissioner of Correction, pleaded in his return that the constitutional claim should be dismissed because it failed to state a ground on which relief could be granted.[11] The respondent argues that judges are free to reject proposed plea agreements even if both parties have agreed to the disposition and that the requirement that pleas be placed on the record arises only when the court has agreed as well. If a court rejects a previously accepted plea prior to sentencing, the defendant is entitled to withdraw the plea. The respondent suggests as well that merely placing the plea agreement and rejection on the record would have provided no actual benefit to the petitioner in any event.[12] The habeas court noted that the petitioner does not have a constitutional right to be offered a plea, nor a right to have any plea accepted by the court. The habeas court further observed that

Practice Book § 39-10 applies only after a plea has been initially accepted by the court, and there was no showing that the trial court had abused its discretion.

This claim presents a mixed question of law and fact over which our review is plenary. See *Small* v. *Commissioner of Correction*, supra, 286 Conn. 717. The petitioner's claim does not implicate a fundamental right.[13] "A defendant has no right to be offered a plea . . . nor a federal right that the judge accept it . . . ." (Citation omitted.) *Missouri* v. *Frye*, supra, 566 U.S. 148. Although the parties presented a plea agreement to the court in chambers, the court did not accept their agreement.

There is nothing to suggest that the petitioner has been harmed by the absence of a record of the rejection of the plea agreement. The petitioner argues that the absence of a record prevented him from pursuing an appeal on this issue. Because there is no right to have a plea accepted, however, and the court has discretion whether to accept a plea, there has been no showing that there would have been the slightest difference in the outcome of the trial if the rejection had been placed on the record. Without harm and any reasonable probability of prejudice, the petitioner cannot prevail. See *Small* v. *Commssioner of Correction*, supra, 286 Conn. 731 (constitutional claim of ineffective assistance of counsel fails because impossible for petitioner to demonstrate reasonable probability that verdict would have been different had omitted jury instruction been included; therefore, no prejudice demonstrated). Accordingly, the habeas court properly dismissed the petitioner's due process claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The habeas court dismissed the due process claim pertaining to the plea process and denied the petitioner's claim of ineffective assistance of counsel in that regard.

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third party by means of a deadly weapon or a dangerous instrument; or . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

[3] The petitioner has combined in part II of his appellate brief the due process claim and ineffective assistance claim regarding the lack of a record showing the rejection of the plea agreement. For convenience, we group the claims of ineffective assistance together.

[4] The sentences on the two counts were concurrent.

[5] The following colloquy occurred when the state moved to enter into evidence Tirado's typed summary:

"[The Prosecutor]: I'm going to show [Tirado] what's being marked as state's exhibit 18 for identification purposes.

"The Court: Attorney O'Brien . . . do you have an objection to the admissibility of this document?

"[Defense Counsel]: No, Your Honor.

"The Court: Okay."

[6] The following unsigned portion of Tirado's transcription, as Tirado read into evidence, is relevant: "[Neri] started getting mouthy with me. He was cussing at me and telling me that he was gonna put a bullet in me. I got

even more [angry] and that was when I started yelling back at him. I then walked back into the kitchen.

"As I walked into the kitchen, this guy came out of the room. I turned around and [Neri] had a gun in his hand and was pointing it at me. When he was pointing the gun at me, he was talking [smack]. . . . I couldn't tell if the gun was real or fake. But now, I was real [angry]. After pointing the gun at me, [Neri] walked back into his room. I was standing by the kitchen table, so when I looked down I saw a steak knife. I then grabbed the knife and went at [Neri]. I was telling him '. . . you got nerve pointing a gun at me!'

When I went at him, me and [Neri] got into a tussle. [Neri] was trying to take the knife from me. I know it was getting rough. That was when [the victim] got into the middle of us. She was trying to break us up. I remember that I was pushing [the victim] to get at [Neri], and I remember [Neri] pushing [the victim] to get at me. Like I said, it was getting stupid. At some point, I was swinging the knife at [Neri]. In the middle of that, [the victim] started screaming 'oh my . . . oh my . . . .' She was screaming real loud. That was when me and [Neri] backed up. We both stared at [the victim]. That's when I realized that she was hurt. At first I ain't know what was wrong, but then I thought about it. That's when I knew that I had stabbed her."

[7] The petition alleged in relevant part: "Trial counsel's acts and omissions . . . fell below the level of reasonable competence required of habeas and/ or criminal defense lawyers within the state of Connecticut for the following reasons . . . D. Failure to request that the trial court . . . create an adequate record regarding the court's refusal to permit a plea bargain offered by the prosecution and accepted by the petitioner, pursuant to the requirements of Practice Book § 39-10. E. Failure to object, on the record, to the trial court's refusal to permit a plea bargain offered by the prosecution and accepted by the petitioner, as an abuse of the court's discretion."

[8] Practice Book § 39-7 provides: "If a plea agreement has been reached by the parties, which contemplates the entry of a plea of guilty or nolo contendere, the judicial authority shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera at the time the plea is offered. Thereupon the judicial authority may accept or reject the agreement, or may defer his or her decision on acceptance or rejection until there has been an opportunity to consider the presentence report, or may defer it for other reasons."

[9] Practice Book § 39-10 provides: "If the judicial authority rejects the plea agreement, it shall inform the parties of this fact; advise the defendant personally in open court or, on a showing of good cause, in camera that the judicial authority is not bound by the plea agreement; afford the defendant the opportunity then to withdraw the plea, if given; and advise the defendant that if he or she persists in a guilty plea or plea of nolo contendere, the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement."

[10] The petitioner suggests that the trial court invaded the province of the prosecution by evaluating the strength of the state's case and the relative likelihood of procuring the appearance of witnesses. If a court should be of the opinion that the state's ability to prove a compelling case is strong, it may well reject an agreement manifesting unusual leniency; however, if the plea has been accepted conditionally by the court, the defendant must be afforded the opportunity to withdraw the plea. See *Santobello* v. *New York*, 404 U.S. 257, 263, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971); see also *United States* v. *Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993) (noting, in federal context, "Rule 11 [of the Federal Rules of Criminal Procedure] expressly permits a court to reject a proposed plea agreement, provided that the court allow the defendant to withdraw the plea and advise the defendant of the potential consequences of withdrawing a plea. Rule 11 does not limit the reasons for which the district court may reject the proposed plea agreement; rather, its terms permit a district court to reject a plea agreement either because the proposed agreement is too lenient or because it is too harsh.") Connecticut recognizes the same principle. See, e.g., *Ebron* v. *Commissioner of Correction*, 307 Conn. 342, 362, 53 A.3d 983 (2012) (noting one element necessary to show prejudice caused by trial counsel's deficient advice against accepting plea offer is that trial court would have accepted proposed agreement); see also Practice Book § 39-7 (court may accept or reject agreement of parties). We have been presented no authority for the proposition that a court's evaluation of the case impermissibly invades the province of the prosecution.

[11] Presumably this defense was raised pursuant to Practice Book § 23-29 (2).

[12] The petitioner suggests that had the rejection been on the record, he would have been able to show that the court "had crossed a line" and acted in a prosecutorial role. Courts, however, exercise discretion in determining whether a proposed plea is appropriate, and independently assessing strengths and weaknesses of both sides is part of the process. See generally the discussion in *State* v. *Cruz*, 155 Conn. App. 644, 654–57, 110 A.3d 527 (2015); see also footnote 10 of this opinion.

[13] No independent state constitutional claim has been advanced.

---